IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-HC-2003-FL

| | | |
|---|---|---|
| JONATHAN ANTHONY UZZELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| STATE OF NORTH CAROLINA, et al., | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |

This matter came before the court on the motion for summary judgment (DE # 9) pursuant to Federal Rule of Civil Procedure 56 of respondent Travis Outlaw ("respondent"). The matter is ripe for adjudication. For the following reasons, the court grants respondent's motion for summary judgment.

**STATEMENT OF CASE**

On August 24, 2006, petitioner was convicted in the Wayne County Superior Court of discharging a firearm into occupied property, assault with a deadly weapon with intent to kill inflicting serious injury, attempted murder, and possession of a firearm by a felon. See State v. Uzzell, 189 N.C. App. 212, 657 S.E.2d 448, 2008 WL 565113 (Mar. 4, 2008) (unpublished). Petitioner was sentenced to a term of one hundred seventy-five (175) to two hundred nineteen (219) months imprisonment and a term of twelve (12) to fifteen (15) months imprisonment. Id. Following his conviction, petitioner, through counsel, filed an appeal to the North Carolina Court of Appeals. See id. The court of appeals found no error. Id. On April 8, 2008, petitioner filed a petition for

discretionary review in the North Carolina Supreme Court, which was denied on June 11, 2008. State v. Uzzell, 663 S.E.2d 861 (N.C. 2008).

On February 13, 2009, petitioner filed a *pro se* motion for appropriate relief ("MAR") in the Wayne County Superior Court. (Resp.'t's Mem. Ex. 7.) Subsequently, petitioner filed a motion to supplement on February 20, 2009. (Id. Ex. 7.) On May 7, 2009, the Wayne County Superior Court denied both motions. (Id. Ex. 8.) Petitioner then filed a *pro se* "motion for appeal" in the Wayne County Superior Court, which was denied on August 6, 2009. (Id. Ex. 9.)

On September 10, 2009, petitioner filed a *pro se* petition for writ of certiorari in the North Carolina Court of Appeals. (Id. Ex. 10.) On September 28, 2009, the court of appeals denied petitioner's certiorari petition. (Id. Ex. 11.)

On January 6, 2010, petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, petitioner alleges the following: (1) the district attorney's office withheld a witness interview; (2) there is an alibi defense; and (3) there was a discrepancy in the type of shells found at the scene. Petitioner also makes the following nonsensical allegation: "testing shells for finger prints and the car for missing weapons." (Pet. p. 9.)

Respondent filed a motion for summary judgment on March 17, 2010, arguing that petitioner's claims are without merit. On April 5, 2010, petitioner filed a response to respondent's motion for summary judgment. In his response, petitioner raised a new claim for ineffective assistance of counsel.

## STATEMENT OF FACTS

The facts as stated by the North Carolina Court of Appeals are summarized as follows:

2

Deputy William Young, of the Wayne County Sheriff's Department, responded to a report of a shooting five blocks from the police station. Deputy Young arrived at the scene and saw a green Lexus stopped, with the engine running. There were three to four bullet holes in the driver's side door and Frederick Montrell Williams ("Williams") was slumped over in the driver's side seat. When Deputy Young opened the door, Williams fell out of the car. Williams was unconscious but alive. Deputy Young noted that Williams had been struck by bullets in his lower back.

After securing the area, Deputy Young saw a young woman sixty yards away, crying and running towards the vehicle. He later learned she was the victim's girlfriend, Stephanie Jones ("Jones"). Jones and defendant had a prior relationship and were raising a child together. However, defendant had found out that he was not the child's father.

The police investigation found that it was likely that two separate weapons were used as different caliber bullets were found at the scene and that the bullets that went through the window on the car likely came from outside the vehicle. Additionally, no weapons were found in the vehicle.

Upon discovering that the police were interested in speaking with him, defendant turned himself in. While discussing the incident with the police, defendant conceded that he had "pull[ed] the trigger" and was sorry and that he did not intend to hurt anyone. At trial, defendant argued that he was acting in self defense when he shot at Williams.

Uzzell, 657 S.E. 2d at *1.

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

3

nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates where the claims have been adjudicated on the merits in the state court is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a
> federal court to determine whether the state court's decision is an
> objectively reasonable one, nor does it require a federal habeas court

4

to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

B.     Analysis

    1.     Brady Claim

In his first claim, petitioner alleges that the Wayne County District Attorney's office withheld material evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). In particular, petitioner asserts that the state withheld its witness interview of Stephanie Jones. In support of his claim, petitioner submitted an affidavit from Stephanie Jones. (Pet. Attach.) The affidavit states that Ms. Jones was subpoenaed to appear at petitioner's trial. The affidavit also states that, prior to trial, the district attorney called Ms. Jones into his office to discuss petitioner's case. (Id.) Ms. Jones' affidavit provides the following description of her meeting with the Wayne County District Attorney:

> The DA asked me how did I know Jo[h]nathan Uzzell and I told him, after we went threw (sic) that he asked me how did I know Frederick Williams and I told him, then he asked me what happened on the day of the shooting. I told him that Fredrick Williams drop me off at home but before I got out of the car we agreed to go to the movies, about 10 minutes later I get a phone from Fredrick Williams asking me what the hell was punk ass referring to (Jo[h]nathan Uzzell) doing outside my house. I (Stephanie Jones) got up and look out the door and no one was out there and I asked Fredrick Williams what he was talking about and that no one was outside my house. Then Fredrick Williams said I'm about to kill his ass referring to (Jo[h]nathan Uzzell) then Fredrick Williams Hung up the phone. The next phone call I receive was from Frederick Williams saying he was shot and for me to run toward the other side of the track. I told the DA the truth

and about all the threats that Frederick Williams made toward (Jo[h]nathan Uzzell) and that I love Frederick Williams but I can[']t lie for him. The DA then said well Mrs. Jones I'm trying to win this case do you know anyone that can help me win. I stated no because that's what happened and you can tell Fredrick Williams to tell you the truth. The DA responded upset and said thank you and I left.

(Id.)

The state has a constitutional duty to disclose to a criminal defendant evidence which is material to the proof of innocence or guilt pursuant to the Supreme Court's ruling in Brady. Brady, 373 U.S. at 87. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985) (quotation omitted). However, petitioner would not be entitled to relief under Brady if "the information sought is otherwise reasonably available." Barnes v. Thompson, 58 F.3d 971, 976 (4th Cir. 1995). That is, "'where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the Brady doctrine.'" Id. at 975 (quoting United States v. Wilson, 901 F.2d 378, 381 (4th Cir. 1990)).

Petitioner does not dispute respondent's assertion that the testimony provided in Ms. Jones' affidavit was available through sources other than the state. Nor does petitioner disagree that this information was discoverable through reasonable diligence. In fact, Ms. Jones' affidavit states that she was in court under subpoena and available to testify as a witness at petitioner's trial. Accordingly, petitioner could have interviewed her prior to trial, and called her as a witness. Brady imposes no requirement on the state to conduct a criminal defendant's investigation for him. See Wallace v. Polk, No. 3:05cv464-C, 2008 WL 1995297, at * 34 (W.D.N.C. May 5, 2008)

6

(unpublished), aff'd, 354 Fed. Appx. 807 (4th Cir. Dec. 2, 2009) (unpublished). Accordingly, because a reasonably diligent petitioner could have discovered the testimony of Ms. Jones, there is no Brady claim.

Alternatively, the MAR court adjudicated this claim and found it to be without merit. In particular, the MAR court found that the allegations made by Ms. Jones in her affidavit do not set forth grounds for relief because "the Affiant admits no first-hand knowledge of the actual assault. The Affiant discloses a favorable relationship with the Defendant and indicated that she was present at trial and available as a witness for the Defendant if called. The opinion of the Court of Appeals indicates that the State itself presented evidence that the victim had shot at and threatened the Defendant on multiple occasions prior to the shooting." (Resp.'t's Mem. Ex. 8); Uzzell, 657 S.E.2d at *3. Essentially, the MAR court found that the Ms. Jones' affidavit was not material evidence. Petitioner has not presented any evidence to refute the MAR court's finding. Nor has petitioner demonstrated that there is a reasonable probability that, had the interview with Ms. Jones been disclosed to the defense, the result of the proceeding would have been different. As a result, the court finds that Ms. Jones' testimony was not material, and there is no Brady violation.

The court finds that the MAR court's decision was not contrary to, nor involved an unreasonable application of, clearly established Supreme Court precedent. Likewise, this court does not find that the state court ruling was based on an unreasonable determination of facts in light of the evidence presented in state court proceedings. Thus, the state court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

2.      Alibi Defense

In his second claim, petitioner argues that he has an alibi defense. With this allegation, it appears that petitioner is attempting to allege a claim for prosecutorial misconduct. Petitioner's prosecutorial misconduct claim consists of the following statements: "made claim to state's opinion that I was aggressor, when all police reports withheld but noted show proof that I wasn't which prejudiced my case, when all parties knew there (sic) existence showing prosecutional (sic) misconduct and deficiencies in testimony by the state witnesses." (Pet. p. 7.) Petitioner has failed to provide any factual support for these claims, nor is there any evidence in the record to support these allegations. Conclusory allegations in a section 2254 petition may be summarily dismissed. See Blackledge v. Allison, 431 U.S. 63, 74 (1977); Tucker v. Dixon, No. 95-7372, 1996 WL 417710, at *1 (4th Cir. July 26, 1995) (unpublished). Accordingly, these conclusory allegations provide no basis to grant the petition.

In any event, in order to establish a claim for prosecutorial misconduct, a petitioner must demonstrate: "(1) that the prosecutor's remarks and conduct were, in fact, improper and (2) that such remarks or conduct prejudiced the defendant to such an extent as to deprive the defendant of a fair trial." United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007) (citing United States v. Golding, 168 F.3d 700, 702 (4th Cir. 1999)). In this case, petitioner has not provided any evidence that the prosecutor acted improperly. Additionally, petitioner has not explained how he was prejudiced by the alleged prosecutorial misconduct. Moreover, there is sufficient evidence in the record to establish that petitioner was guilty of discharging a firearm into occupied property, assault with a deadly weapon with intent to kill inflicting serious injury, and attempted murder. Therefore, this claim provides no basis for granting the habeas petition.

3. Negligent Investigation

8

Petitioner's third and fourth claims are difficult to understand. It appears that petitioner is attacking the sufficiency of the evidence used to convict him of discharging a firearm into occupied property, assault with a deadly weapon with intent to kill inflicting serious injury, and attempted murder. The North Carolina Court of Appeals adjudicated this claim and found it to be without merit. Specifically, the court of appeals found:

> Defendant argues there was insufficient evidence upon which to convict him of the three convictions he is appealing because the State failed to refute the evidence of self-defense.
>
> The State bears the burden of proving that defendant did not act in self-defense. *State v. Herbin,* 298 N.C. 441, 259 S.E.2d 263 (1979). To survive a motion to dismiss, the State must therefore present sufficient substantial evidence which, when taken in the light most favorable to the State, is sufficient to convince a rational trier of fact that defendant did not act in self-defense. *State v. Hamilton,* 77 N.C.App. 506, 513, 335 S.E.2d 506, 511 (1985) (citations omitted).
>
> Perfect self-defense establishes a complete excuse for a killing or, in this case, an excuse for an attempted killing and the crimes committed in furtherance of that attempt. *See State v. Ammons,* 167 N.C.App. 721, 725-26, 606 S.E.2d 400, 404 (2005). Perfect self-defense will be found when:
>
> " '(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and (2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and (3) defendant was not the aggressor in bringing on the affray, i .e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and (4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.' "*Id.* (quoting *State v. Reid,* 335 N.C. 647, 670, 440 S.E.2d 776, 789 (1994) (citation omitted)).
>
> As to the first element, that defendant believed it necessary to shoot the victim to protect himself, the State presented defendant's own

9

statement, made to the police, in which he said that, after his brother dropped him off before the shooting, his brother "did not know what was on my mind. I panicked out of fear and frustration. I can't take anything back, but I'm sorry, sorry, sorry. I didn't mean to pull the trigger or hurt anyone." From this statement, coupled with evidence presented by the State that the victim had shot at and threatened defendant on multiple occasions prior to the shooting, a rational jury could infer that defendant had only a generalized fear of the victim, and that there was no immediate need to use deadly force. Thus, under the second factor, a person of ordinary firmness would not feel that deadly force was necessary under the circumstances. Although defendant argues that this evidence is merely circumstantial, this Court has held that circumstantial evidence which supports a finding that the offense charged has been committed is sufficient to deny a defendant's motion to dismiss. *State v. Blizzard,* 169 N.C.App. 285, 289, 610 S.E.2d 245, 249 (2005).

As to the third element, that defendant was not the aggressor, the State presented evidence that shell casings were found behind large bushes, several feet away from the victim's car. From this testimony, a jury could conclude that defendant was lying in wait for the victim and was the first to act. Defendant's own statement, that his brother did not know what he had on his mind, also indicates that defendant was planning on being the aggressor were he to encounter the victim. Further indication that defendant was the aggressor came from police testimony regarding the car windows being shot out. Officer Harris testified that typically, persons firing from inside a car roll down the window before shooting. Accordingly, a jury could infer that defendant had shot out the windows before the victim engaged defendant in an altercation.

While there was no evidence, circumstantial or otherwise, presented as to the fourth element, that defendant used reasonable force, we conclude that the State presented sufficient evidence to submit to the jury the charges of attempted first degree murder, assault with a deadly weapon, and intent to kill inflicting serious injury. Accordingly, defendant's assignments of error are overruled. *See Strickland,* 466 U.S. at 700, 80 L.Ed.2d at 702

Uzzell, 657 S.E.2d at *3-4.

10

Although claims of insufficient evidence are cognizable on collateral review, a federal court's review of such a claim is "sharply limited." Wright v. West, 505 U.S. 277, 296 (1992). The standard of review for a claim of insufficient evidence on habeas corpus review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Wright, 505 U.S. at 284; Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court finds that based upon the above-stated evidence, there is sufficient evidence to support a finding that a rational trier of fact could find the elements of the instant crimes beyond a reasonable doubt. Petitioner has not presented any evidence to the contrary. Accordingly, the court finds that the court of appeals' decision was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

In addition to his sufficiency of the evidence claim, it appears petitioner is arguing that he is innocent of the crimes of discharging a firearm into occupied property, assault with a deadly weapon with intent to kill inflicting serious injury, and attempted murder. In support of this claim, petitioner argues that there was evidence that was not properly investigated that demonstrates that someone else shot the victim. However, petitioner has not presented sufficient evidentiary support for such a claim. Instead, he has merely provided the court with conclusory allegations. Petitioner's unsupported allegations do not warrant relief. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogated on other grounds recognized by Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999) ("In order to obtain an evidentiary hearing . . . a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."). Moreover, as stated above, there is evidence in the record to support his convictions for all three crimes, including evidence that petitioner admitted he

11

shot the victim. See Uzzell, 657 S.E.2d at *3-4. In fact, petitioner himself admitted at trial that he shot the victim and ran from the scene. (Tr. p. 214.) Thus, the court finds that petitioner's actual innocence claim is without merit.

4.      Ineffective Assistance of Counsel

In response to respondent's motion for summary judgment, petitioner alleges a claim for ineffective assistance of counsel. Essentially, petitioner argues that he received ineffective assistance of counsel because his trial counsel knew about Ms. Jones' testimony and failed to share it with him.

Under 28 U.S.C. § 2254(b), a state prisoner must exhaust his state court remedies before seeking federal habeas corpus relief. The exhaustion requirement is satisfied after the state prisoner gives the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Petitioner bears the burden of proving exhaustion. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).

In North Carolina, the procedure for pursuing an ineffective assistance of counsel claim is to file a motion for appropriate relief in North Carolina Superior Court. See N.C. Gen. Stat. § 15A-1415(b)(3); State v. House 340 N.C. 187, 196-97, 456 S.E.2d 292, 297 (1995). Petitioner has not demonstrated that he exhausted, or even pursued, this remedy. Thus, petitioner's claim for ineffective assistance of counsel is dismissed without prejudice.

Even if petitioner had exhausted his ineffective assistance of counsel claim, it still would be without merit. The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish a two-prong test. First, petitioner

12

must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Id. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 687. For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Id. at 694. Even then, however, habeas relief may be granted under Strickland only if the "result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993); Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998).

Petitioner is unable to establish the second prong of the Strickland test, that but for the deficiency, the outcome of the proceedings would have been different. Petitioner contends that Ms. Jones' testimony was necessary to demonstrate that the victim was a threat to petitioner. However, as stated, supra, the MAR court found, in connection with petitioner's Brady claim, that "[t]he opinion of the Court of Appeals indicates that the State itself presented evidence that the victim had shot at and threatened the Defendant on multiple occasions prior to the shooting." (Resp.'t's Mem. Ex. 8); Uzzell, 657 S.E.2d at *3. Accordingly, the testimony of Ms. Jones would have been cumulative because the jury heard evidence regarding the fact that the victim threatened petitioner on prior occasions. Additionally, the state presented evidence at trial that petitioner was the aggressor. In particular, the court of appeals stated that the evidence indicated that "the bullets that went through the window on the car likely came from outside of the vehicle." Uzzell, 657 S.E.2d at *1. Based upon the foregoing, petitioner is not able to demonstrate that there is a reasonable

13

probability that, but for the alleged deficiency, the outcome of the proceedings would have been different. Thus, petitioner is unable to establish the prejudice prong of the Strickland test, and this claim is without merit.

## C.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds

14

first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE # 9) is GRANTED. Petitioner's ineffective assistance of counsel claim is DISMISSED without prejudice, and his remaining claims are DISMISSED with prejudice. The certificate of appealability is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 14th day of March, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge

15